Good morning, your honors. May it please the court, I'm Philip Trevino on behalf of the appellant in Senate v. Velazquez. And I have no further presentation for the court. The factual recitals in the briefing and the case law is discussed therein. But I'd be very happy to entertain any questions that the court may have. Well, why don't we hear from the other side and then you may have something in response. I'll be happy to do so. Thank you, your honor. Good morning, your honors. Douglas Axel on behalf of the United States. I was not aware that the appellant was going to submit. I'm a little bit unsure at this point whether I should give a presentation or open myself to questions. I'm happy to give it. Why don't you give a presentation and we'll see where we go from there. Very well. You needn't take the full 10 minutes if you don't want to. Okay. Your honor, defendant, appellant, there's no dispute here that the defendant received a fair, error-free trial. There is no assertion of error that the defendant makes with respect to his trial or his sentence. There's no claim that any of the lawyers that he had, including his trial lawyer, provided ineffective assistance of counsel. The only assertions of error he makes is with respect to a single hearing conducted by a judge, a court other than the trial court, in which the court declined to interfere with the decision of his retained counsel to withdraw from the case. There's essentially two assignments of error he makes. One is he claims that that decision, allowing his counsel to withdraw,  the second assertion of error that he makes, essentially, is that his absence violated his constitutional and his Rule 43 rights to presence. With respect to the first assignment of error, the decision to allow counsel to withdraw does not even implicate the Sixth Amendment. As the government explained in his papers, defendant has no Sixth Amendment right to counsel who, for whatever reason, have declined to represent him. In his reply brief, he says, well, but courts keep lawyers in all the time against their will. And it's true that the trial court does have the power to keep a lawyer in a case if letting a lawyer out will prejudice the defendant, will interfere with the trial court's calendar. However, where the opposite is true, as here, where letting the lawyers out, as they wish to do, would not prejudice the defendant, where the defendant still would receive, as he did, effective assistance of counsel, where letting the lawyers out would not interfere with the court's administration of its calendar, the Sixth Amendment is not implicated by letting the lawyers go. There's nothing. But the lawyer can't get out on a whim, can it? In other words, doesn't there have to be some basis for the lawyer's request to be released? Well, yes, Your Honor. And I think under, essentially, local rules, the motion to withdraw has to be for cause. However, as far as the Sixth Amendment is concerned, if it's the lawyer's decision to sever the relationship for whatever reason, the Sixth Amendment is not implicated by the court letting them go. The court there isn't interfering with the relationship. As a matter of practice, courts will require a lawyer to show cause because, as a matter of practice, you don't want lawyers for no reason at all. And a court also must ensure that the lawyer getting out will not affect the defendant's ability to obtain effective assistance of counsel. That's really the most, as far as the Sixth Amendment is concerned, that's the interest. The cases that the defendant cites all concern a situation in which there was a relationship that was going to be formed. The parties wanted to form the relationship, the defendant and his lawyer. The defendant wants a new counsel to substitute, and there's counsel that's ready, willing, and able. And the courts say, no, you can't do that for some other reason. So therefore, the court there is interfering with the relationship. Here, the relationship was dissolving on its own. The court simply didn't override the decision of counsel. Therefore, the Sixth Amendment isn't implicated. Additionally, if the Sixth Amendment is somehow implicated by that event, just letting counsel go on their own free wishes, as Nix v. White side and the other cases hold, the decision here was there was a perfectly good reason. Some California cases suggest that an attorney must withdraw, but setting that issue aside, the court doesn't need to reach that. It certainly is not a violation of the Sixth Amendment to allow counsel out when they believe that their client is going to commit perjury. Was it error to exclude the client from the conference between Mr. Bernstein and Mr. Grabera on one side and Judge Collins on the other? That is to say, they told a story that their client was about to commit perjury and they didn't want any part of it. Should the client have been allowed to be there to say, well, that's not true? Your Honor, I think looking at the record, you know, after the fact, and of course the government wasn't there, I think probably the best practice would have been for Judge Collins, after hearing from the lawyers, to give the defendant then an opportunity to come in chambers or to go out on the record and give the defendant an opportunity to address it. However, the failure to do that is not a reversible error for several reasons. First, as we explain in our brief, and I think the cases are right on point, it's a plain error standard of review. Second, I think the failure to have the defendant there does not violate his constitutional rights. Whether it would have been better as practice to do it, I think yes. It does not violate his constitutional rights. It doesn't violate his Sixth Amendment Confrontation Clause right because there's no witness against him. It doesn't violate his due process right, I believe, or at least it's certainly not clear that it violates his due process right under a plain error standard of review because this is not a proceeding that's in connection with the trial. The Supreme Court cases on right to presence under the Due Process Clause all concern trial-related proceedings. In Snyder v. Massachusetts, that was the jury show where the jury went out to view the scene and the defendant wasn't there. The Court held that the due process right concerns trial proceedings that are important to the outcome of the trial, to the defendant's ability to defend, and Snyder v. Massachusetts hold that pretrial motions are decided all the time with the defendant not there. So I think that it's far from clear that the defendant that there's a due process right for the defendant to have been here. Moreover... You seem to be arguing almost that a lawyer's unilateral decision to withdraw is basically unchallengeable by the defendant. I'm saying that it's not a violation. The defendant has no Sixth Amendment interest. Once the lawyer chooses to get out, the defendant has no Sixth Amendment interest other than to a Sixth Amendment right to the effective assistance of representation after the fact. Here, after the motion, after the withdrawal was granted, the defendant retained his right to choice of counsel. He could have chosen any counsel in the world other than lawyers who didn't want to represent him. Well, no, that turns out on the facts not to be true because he doesn't have enough money, so he's assigned a counsel. Correct. He doesn't have money and he has no right if he can't afford it. So you're saying that he could have chosen any counsel in the world on the facts of this case is not true. Well, if he had the money, he could have. Yeah, and if pigs had wings. Right, and Wheat holds that if one doesn't have money, there's no Sixth Amendment right. I understand that, yeah. How long a continuance was granted after the substitution in of the public defender as counsel? It was an appointed panel. It wasn't the public defender, and there was four months from that. Oh, it was a CJA lawyer? Correct, Mr. David Reed. And that was in March, and the trial was in July, four months. And finally, Your Honor, I would just like to emphasize... Was there any suggestion that that wasn't enough time? No, Your Honor. In fact, in the record, in the excerpts, there was a hearing with Judge King and David Reed in which, before the trial date was set, the judge asked a new counsel whether that was sufficient time, whether all avenues for plea had been reached, and the lawyer said, yes, he had had plenty of time, and there was no further avenues to explore. It was a one-week trial, and there was a four-month period there for counsel to get up to speed. And finally, Your Honors, I'd just like to point out that the defendant here does not request that Bernstein and Cabrera be appointed on remand. What he's asking for is just a reversal. On remand, what would he get? He would get, essentially, the same proceedings, the same trial he had had before. He would get the same counsel as some other appointed counsel. He'd get the same trial under the Morrison case, the Supreme Court case. Sixth Amendment violations are to be remedied narrowly without due concern for competing interests. And really, there's nothing here that reversal would accomplish to the extent there was any taint the government says there wasn't, and certainly not reversible error. There would be nothing to remedy here by reversal. Thank you, Your Honor. Okay, thank you very much. Do you have a response? Oh, most certainly, yes, Your Honor. So you just wanted to hear from him first before you went? Was that the deal? I was happy to invoke whatever the court wanted to do. I have to start, however, by pointing out that a reversal would not simply give my client the same trial again that he had. The trial that he had was, for him, under an aura of question as to what the integrity of the court was about, what his counsel was likely to do, given that he already had three retained lawyers who had ditched him in a way that he never understood while he was undergoing his trial in the district court. How do we know that he never understood? Now, I assume Mr. Rensser, he understood, but Mr. Rensser said, listen, I wasn't paid enough to do this. Well, that aspect of it, yes, but in terms of why the other two lawyers left, we know that he didn't know it because the transcript was sealed. He was excluded from the appearance. Mr. Rensser was excluded from the appearance. How could he have known? Well, how could he have known? I think the record is silent on this point, but he could easily have known. Those two lawyers could have said, you know, we can't represent you anymore because we won't desist you in committing perjury. Except that the record does disclose that that discussion hadn't happened at least as the time that Mr. Rensser made his filing with the district court in which he indicated that Mr. Bernstein's filing was improvident since Mr. Bernstein did not seem fit to consult with Mr. Rensser or with the client. Or with the client, okay. Or with the client. That point was very clearly controverted before Judge King or Judge Collins commenced the hearings that caused this problem. So although the government doesn't seem to contribute much weight or assign much weight to it, I have to respectfully disagree. The trial, if my client were, in fact, to gain a new trial in the district court, would be significantly different. Perhaps the factual presentation might be somewhat similar, but from my client's perspective, a man who currently is serving a sentence of 151 months in Federal custody, still wondering exactly what happened to the three lawyers whom he paid, it would be a drawback. Wait a minute. Still wondering? He doesn't even know now? Well, he knows what has been in these papers. But in terms of what actually transpired, what Mr. Bernstein, my client, as the Court is aware from our pleadings, has denied these allegations that Mr. Bernstein and Mr. Cabrera make that my client was proposing perjury. He didn't have an opportunity to have that discussion with the district court or to controvert that directly with the district court. So from his perspective, what the truth is, if you will, is not what's in the papers now. What would have happened if in front of Judge Collins, the two lawyers, Bernstein and Cabrera, had said, this client wants us to assist him in committing perjury and we want no part of it. The client had said, no, as I fully expect most clients in that situation would, say, well, no, I don't want them to commit perjury. I just want them to put on the defense that I say is the right defense. What should Judge Collins have done in that circumstance? Can I stop? And I'd like to answer the question, but I think there's a very important principle that has to be addressed first. Fine. I fully recognize, I've tried many cases in the district court, and I fully recognize and honor the ethical duty of any counsel not in any way to condone perjury. However, in order for your honors question to become apt, there has to be some information put in front of the presiding judge. Whether it's Judge King or Judge Collins, somebody had to say, and it had to be a legitimate, judicially approved manner for that information to reach the court, that perjury was afoot. And the record that this court faces makes it very clear there is no waiver anywhere of the privileged communications that happened between my client and his counsel. But these communications, according to the attorneys, were for the purpose of committing a crime or a fraud. Do they continue to be privileged? If, in fact, that's a true premise, Your Honor, no, they're not privileged at that point. The problem we have here is that those representations to the district court were made explicitly outside of my client's presence. The prior representation from counsel to the district court was, I'm not at liberty to do it. I want out. I'm not at liberty to tell you why. Isn't that, following up on Judge Fletcher's question, isn't that enough if counsel says, I want out and I can't tell you why, Judge? Most respectfully, Your Honor, it is not. It's a difficult situation for a criminal defense lawyer, and it's one that we all face regularly. But that is not enough from the court's perspective that you have the simple request, I don't want to be in this case any longer. That, in and of itself, unadorned. If the problem is right and there is, in fact, truth to the lawyer's assertion, then that, presumably, we've got enough of a rift between the counsel and the defendant that the defendant is ready to go in front of the court and start to make the accusation, I'm unhappy with my lawyer, I want a new lawyer, or the defendant signs. It's a simple one-page form. That's the proposed substitution of counsel. The defendant signs saying, I want a new lawyer. Is it your position that counsel, retained counsel, I'm not talking about public offender, has a duty to continue regardless of his desire to continue? To remain as counsel in the matter, yes. Even after he's given notice that he wants to withdraw? There is a proper order relieving counsel. Well, yes, until the proper order. But it's sufficient cause that he doesn't want, wish to serve this client any longer for his own reasons, is it not? Not if there's potential prejudice to the defendant. Well, of course. But if he does it well enough ahead of trial to allow counsel to be substituted in to get somebody else, I mean, the 13th Amendment to the Federal Constitution prohibits slavery, doesn't it? If the counsel wants to be relieved, there's nothing wrong with his having that desire. He needs, of course, judicial approval. Of course. And at that point, when the court becomes involved, it is the court's province to decide whether the request is appropriate. And all of these matters, in this particular instance, there is still prejudice to my client, Your Honor. We can't establish it because the record isn't developed in this regard, but the clear implication is there, which is that the plea negotiations which had been underway came to a cessation. What may or may not have happened once Mr. Reed became counsel and why no further negotiations occurred is open to nothing other than speculation, which can't satisfy any of us. The potential there is very identifiable for a distinctive prejudice to my client, a potential that was identified by Mr. Rensser in his pleadings. When he said, I'm sorry, the day after Mr. Bernstein filed a submission saying no prejudice will adhere to the defendant, Mr. Rensser immediately chimed in and said, I'm sorry, that's not true. The defendant will, in fact, face prejudice, and I will also have to get off this case. So these situations, I think, is very meddlesome. And did, in fact, your client suffer prejudice? That is to say, was there inadequate representation with the lawyer he finally ended up with? We're not making any claims. Government is correct. We make no claims with regard to the trial itself. And there was a sufficient time to prepare? There was sufficient time to prepare, but, Your Honors, under Nader, I'd respectfully submit that's an inapt inquiry. The nature of this particular error, which is structural in and of itself, given the fact that it goes to the continuity of counsel and particularly retained counsel and, moreover, three counsel, all of whom in one fell swoop outside my client's presence basically disappeared, that in and of itself is a structural error such that no prejudice needs to be established or shown. I understand your position on that point. I think we drifted away from the question that prompted an interesting colloquy, but my question was, and here it comes again, assume that, in fact, your client either was present while Mr. Bernstein and Mr. Cabrera spoke with Judge Collins or was there immediately thereafter so that he could chime in and say, but it's not true. I did not want them to commit perjury. I wanted them to put on my defense, which is X. What should Judge Collins then have done, given the conflict between the testimony on the one side from Mr. Bernstein and Mr. Cabrera and on the other side from your client? She should have at least at that point undertaken the inquiry, the three-pronged inquiry this Court has repeatedly endorsed in situations where there's a disagreement between counsel and the defendant. And Adelso-Gonzalez is a good illustration of the analysis this Court has offered the district courts repeatedly. That, of course, doesn't happen here because that corresponding response from the defendant never occurred. I understand that. That's why I asked the question the way I did. It's a what-if question. That if we had at least gotten past and I have to stop again, I hate to emphasize the point, but I do think it merits serious scrutiny from this Court. You can't get into any of that analysis. Unless you're into that information, something gets in front of the district court. My client has a privilege, which the U.S. Supreme Court has repeatedly recognized and I know this Court significantly appreciates, the confidentiality between attorney-client communications. But Judge Bea said, and I think you agreed with him, that if your client is contemplating a crime, the privilege disappears. And the fact that he might deny that he's committing a crime doesn't mean that the privilege automatically reappears. I mean, the question is, is he contemplating a crime? But the privilege as to that nature of the discussion may arguably disappear. But I have to – that doesn't – I understood Judge Bea's question, however, to mean would that result in the counsel being relieved. And I have to respectfully suggest, no, it doesn't. Counsel is always prohibited from endorsing or in any way condemning the perjury. But there are many ways in which counsel may discharge his duties or her duties correctly and completely and ethically without – and remaining as counsel even with an unhappy defendant, without violating any of those ethical prohibitions. Okay. Thank you very much. It turns out you did have quite a bit to say. Invariably, I do. Okay. Next time, I might suggest you can say it first and then we'll let him say it. I never do, especially first case in the morning. I'm sorry. Thank you very much. Thank you both sides for their arguments. United States v. Velazquez is now submitted for decision. The next case on the argument calendar is…
judges: T.G. Nelson, W. Fletcher, Bea